IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. |
| RICKY DALE SORRELLS | (Related to Case No. 3:17-CR-678-M) |
| | 3-18CR-169-N |

## INFORMATION

The United States Attorney Charges:

### Introduction

1. From in or around 2011 to in or around 2017, Person A, the president of Company A, a technology company that put cameras on school buses, paid **Ricky Dale Sorrells**, the superintendent of Dallas County Schools (DCS), in excess of $3 million in bribe and kickback payments in exchange for favorable official action, including **Sorrells**' decision to enter into contracts and licensing agreements on behalf of DCS and to purchase school-bus-camera equipment.

2. To disguise the bribe and kickback payments made to **Sorrells**, Person A funneled a significant portion of the illicit payments through various pass-through companies created and operated by his business associate, Slater Washburn Swartwood, Sr., as well as through a law firm. Person A also created an account in the name of a nonexistent company so he could conceal payments that he made toward **Sorrells**' credit card debt.

3. To further disguise the bribe and kickback payments, **Sorrells** received a portion

Information - Page 1 of 10

of the payments through shell companies which he created in his and/or a family member's name(s) at Person A's behest.

4. In an effort to obscure the illegal purpose of the payments from Person A to **Sorrells**, the coconspirators created fake consulting agreements, fake invoices, a fake real estate business, fake loan documents, discussed tying all past payments from Person A to **Sorrells** to the "note," conspired to have **Sorrells** begin making payments on the "loan," after which Person A would "recycle" the money back to **Sorrells**, and created a document with a narrative to ensure that they all had their stories straight.

5. In total, **Sorrells** received more than $3 million in bribe and kickback payments from Person A to help secure over $70 million in contracts, agreements, and orders for Company A, all of which the coconspirators concealed from DCS, its board, and the taxpayers who funded DCS. DCS, for its part, made just pennies on the dollar under the agreements that **Sorrells**, on DCS's behalf, entered into with Company A, leaving the agency in severe debt and teetering on the verge of bankruptcy.

## Duty of Honest Services

6. Until March 2017, **Sorrells** was the superintendent of DCS. In that capacity, he had authority to enter into contracts on DCS's behalf that exceeded $50,000 and had the authority over purchasing, including equipment orders.

7. **Sorrells** was a public servant as a result of his position. **Sorrells** owed a duty of honest services to the citizens of Dallas County and his employer to perform the duties

and responsibilities of his office free from bias, conflicts of interest, self-enrichment, self-dealing, concealment, deceit, fraud, kickbacks, and bribery.

8. DCS and the citizens of Dallas County expected, and were entitled to receive, **Sorrells'** honest services in his fulfillment of his employment responsibilities. It was a violation of **Sorrells'** duty, and of DCS's and the citizens of Dallas County's rights to his honest services, for **Sorrells** to accept bribe and kickback payments from a vendor, such as Company A, whose contracts, agreements, and purchase orders **Sorrells** participated in awarding.

9. By paying and causing the payment of bribes and kickbacks to **Sorrells**, Person A deprived DCS and the citizens of Dallas County of their right to **Sorrells'** honest services in the fulfillment of his employment responsibilities.

## Count One
## Conspiracy to Commit Honest Services Wire Fraud
## [Violation of 18 U.S.C. § 1349]

10. All preceding paragraphs of this Information are realleged and incorporated by reference as if set forth fully herein.

11. From in or around 2011 to in or around 2017, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Sorrells**, Person A, Swartwood, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

12. It was a part and object of the conspiracy that **Sorrells**, Person A, Swartwood, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive DCS and the citizens of Dallas County of its intangible right to **Sorrells'** honest services as a public servant, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, **Sorrells**, while serving as the superintendent of DCS, would take official action favorable to Company A, including entering into contracts and licensing agreements on behalf of DCS and purchasing school-bus-camera equipment, in return for payments from Person A, which were often funneled to **Sorrells** through pass through-

companies owned and controlled by Swartwood, and in connection therewith and in furtherance thereof, the coconspirators transmitted and caused to be transmitted interstate electronic wire transfers of funds.

## Manner and Means of the Honest Services Fraud Conspiracy

13. During the honest services fraud conspiracy, Person A paid **Sorrells** over $3 million in bribes and kickbacks, including paying a portion of **Sorrells'** credit card debt and student loan debt.

14. In return, **Sorrells**, acting on behalf of DCS, took official action favorable to Person A and Company A, including, but not limited to, purchasing millions of dollars worth of cameras, many of which were never installed on school buses and instead sat unused in a warehouse, and entering into a $340,000 per month servicing agreement and a $25 million asset purchase/licensing agreement. In the end, **Sorrells'** official actions for the benefit of Person A and Company A resulted in DCS paying Company A over $70 million and incurring significant and ultimately debilitating debt.

15. As part of the conspiracy, the coconspirators undertook significant efforts to disguise and conceal the source and purpose of the bribe and kickback payments to **Sorrells**.

16. Person A generally did not pay **Sorrells** directly. Instead, Person A caused over $2 million in bribe and kickback payments to be transferred to pass-through entities controlled by Swartwood, including Elf Investments, Cambridge Realty Group, LLC

(Cambridge), and Anrock Realty Services, LLC (Anrock), after which Swartwood, at Person A's direction, would pay **Sorrells** or shell companies that **Sorrells** controlled.

17. Person A also caused approximately $800,000 in bribe and kickback payments to be transferred to a law firm, after which the law firm, at Person A's direction, would pay **Sorrells** or shell companies that **Sorrells** controlled.

18. As part of the conspiracy, and as a further act of concealment, Person A directed **Sorrells** to open shell companies in a family member's name and/or his name, including Allegro Research and Consulting (Allegro), Photon IT Product Development, Inc. (Photon), and Sreig International (Sreig), so it did not appear that **Sorrells** was directly receiving payments.

19. Person A, at various times during the conspiracy, had **Sorrells** submit phony "consulting" invoices in an attempt to grant the bribe and kickback payments an air of legitimacy. The coconspirators also created fake real estate referrals that **Sorrells** allegedly supplied so payments to him could be justified as a fee.

20. Person A, at some point during the conspiracy, decided that all past and future payments to **Sorrells** were better concealed as a "loan."

21. At various points during the conspiracy, Person A discussed having **Sorrells** start to make payments on the loan to make it appear legitimate, but Person A assured **Sorrells** that he would recycle the fake payments back to **Sorrells**, potentially through PayPal.

22. In addition to bribe and kickback payments made through Swartwood's companies

and the law firm, Person A also paid over $200,000 toward **Sorrells**'s credit card and student loan debt.

23. In order to disguise a portion of these bribe and kickback payments, Person A created and funded a bank account for a nonexistent company and then used the entity to pay some of **Sorrells**' credit card debt.

All in violation of 18 U.S.C. § 1349.

## Forfeiture Notice
[18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c)]

The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the offense in violation of 18 U.S.C. § 1349 set forth in Count One of this Information, the defendant, **Ricky Dale Sorrells**, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes the following:

- $8,633.51 in United States currency seized from the account ending in x5221 on March 6, 2017;

- $3,659.01 in United States currency seized from the account ending in x1665 on March 5, 2017;

- 2014 Maserati GHI, Vehicle Identification Number ZAM57RTA0E1112238, titled to Ricky Dale Sorrells;

- 2012 Porsche Cayenne, Vehicle Identification Number WDCGG5HB2FG437070, titled to Ricky Dale Sorrells;

- Assorted jewelry purchased from Windsor Auction House, Inc. on or about April 5, 2013 in the amount of $49,662.93; and

- Custom-made 14K gold bracelet set with 51 princess cut diamonds weighing 10.53 carats with a grade of H/SI$_1$ purchased for $16,400 on May 21, 2015.

If any of the property described above, as a result of any act or omission of the

**Information - Page 8 of 10**

defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

ERIN NEALY COX
UNITED STATES ATTORNEY

_____
ANDREW O. WIRMANI
Assistant United States Attorney
Texas Bar No. 24052287
JOSEPH A. MAGLIOLO
Assistant United States Attorney
Texas Bar No. 24074634
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Tel:  214.659.8600
Fax: 214.659.8809