January 25, 2022

Honorable Chief Justice Barbara Lynn
Northern district of Texas
1100 Commerce Street Room 1452
Dallas, Texas   75242

RE: Case Number 3:18-cr-169
    Ricky Dale Sorrells



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB - 8 2022

CLERK, U.S. DISTRICT COURT
By_____
                  Deputy

Honorable Chief Justice:

I am requesting to be considered for Compassionate Release pursuant
to 18 U.S.C. section 3582 (c)(1)(A)(i) seeking early release due to
COVID related health concerns.

There have been numerous outbreaks of COVID at the Beaumont Facility
where I am housed.  There are numerous staff that daily ignore mask
mandates including those Officers who conduct the daily counts
multiple times a day.  Although the Beaumont Low FCI and Camp are
currently "reporting" a small number of infections presently, it has
a history of high levels of infection (see Federal Bureau of Prisons,
COVID-19 cases, https://www.bop.gov/coronavirus/).  Last month we had
a death of an inmate who was "fully recovered" from COVID (see Exhibit 1).
We have sporatic and very limited outside recreation which is known
to assist with COVID issues.  The Beaumont Camp has a ventilation system
where the exhaust fans have not worked for over 2 years.  You are
constantly breathing in air from inside the unit just being re-circulated.
No fresh air is inside the unit so you are exposed to anything inside
the building over and over again.

On January 10, a number of inmates in one of the four camp buildings
(Unit A) had inmates test positive for COVID.  The Camp Administration
locked down the unit on quarantine for 14 days.  The day they were to
be released from lock down, another building (Unit B) had inmates test
positive for COVID and they are now locked down in Quarantine.  It is
only a matter of time before the unit I am in (Unit C) has inmates test
positive.  With the Delta and Omicron variants now spreading so rapidly,
infections will continue to rise in an environment where I cannot social
distance, follow CDC guidelines to stay safe.  I am unable to take the
life saving COVID vaccine.

I have a number of CDC designated risk factors including:
  (1)  I am 66 years old.  According to the CDC, this places me in
       the "at risk" category for extreme complications if infected,
  (2)  I have the following CDC and other medical conditions and take
       medications as listed:
       (a)  SEVERE ALLERGIC REACTION to the COVID vaccine,
       (b)  hypertension (Lisinopril and Hydrochlorothiazide)
       (c)  high cholesterol (Atorvastatin)
       (d)  arthritis (Meloxicam)
       (e)  diverticulitis (Calcium Polycarbophil)
       (f)  allergies/asthma/breathing issues (Fluticasone Prop,
            Proair HPA albuterol/sulfate inhaler)
       (g)  cardiovascular (Aspirin 81 mg)

Sorrells, Ricky                                              page 2

I list all of these conditions as multiple conditions and my age are known to affect recovery from COVID. I suffered a severe allergic reaction to the first dose of the vaccine possibly anaphylaxis. I was told by Medical Staff NOT to take ANY additional COVID vaccines. I had to be given a shot by medical for my reaction. I therefore simply CANNOT be vaccinated and must protect myself through other CDC guidelines. Living in a prison with roughly 100 other inmates 24/7, eating in a location with up to 200 inmates, and working with Officers who are unmasked can all cause me to contract a severe case of COVID. Based on CDC statistics as an UNVACCINATED person age 66 with other medical conditions, I may not recover. (see Exhibit 2)

This is highly "extraordinary" in that according to the CDC Vaccine Adverse Reporting System only 11 cases per million doses administered showed cases of anaphylaxis. Additionally compelling is that a CDC study in September 2021 reported that people who were not fully vaccinated in the spring and summer were more than 10 times more likely to be hospitalized and 14 times more likely to die of COVID than fully vaccinated people. This DOES NOT include the additional additive of age. In the BOP, based on population and the above statistics, I might be the only person with this reaction in the entire BOP. Again, a truly extraordinary and compelling reason (based on CDC statistics).

Also, the CDC "Covid Data Tracker" in October 2021 noted that people age 50+ who are unvaccinated had 10 times the risk of testing positive for COVID and were 20 times higher for the risk of dying from COVID compared to fully vaccinated persons with boosters (data posted 12/17/21).

Forbes reports July 1, 2021 3:29 p.m.EST "99.5% of People Killed in Last 6 Months Were Unvaccinated Data Suggests." The article starts with a quote from CDC Director Dr. Rochelle Walensky "CDC Director Dr. Rochelle said at a Thursday White House briefing that preliminary data reviewed by her agency suggests 99.5% of the people who died from COVID over the past six months were unvaccinated, a stunning statistic in support of her assertion that nearly every virus linked death is now preventable."

Additonally WH.gov December 21, 2021 State Dining Room 2:42 p.m. EST in the speech from President Biden and he states"...If you are not fully vaccinated, you have a good reason to be concerned. You're at a high risk of getting sick and if you get sick you're likely to spread it to others, including friends and family. And the unvaccinated have a significantly higher risk of ending up in a hospital or even dying. Almost everyone who has died from COVID-19 in the past few months has been unvaccinated. Unvaccinated."

Medical studies have indicated that one of my medications, Lisinopril, can have a negative interaction with the COVID virus and add to its complications. Also, after having a mild case of COVID in 2020, I continue to have post COVID symptoms of fatigue and difficulty breathing. I have been given a 21 dose pack of methylprednisolone tab 4 mg for emergency situations where my breathing and swallowing become difficult.

Sorrells, Ricky                                                     page 3

Additionally Your Honor I am asking for your help because of the
lack of timely implementation of the rules and regulations at the
BOP here in Beaumont.  The latest Inspector General Report of
November 15, 2021, Managment Advosiry Memorandum 22-007 highlights
the lack of implementation of FIrst Step and CARES Act in DEFIANCE
of both Congress and Judges.  Recently Rep Jerry Nadler (D-NY) and
Chair of the House Committee on the Judiciary states that the BOP
has a duty "to make sufficient use of the authority granted to it
under the CARES Act to place certain prisoners at home confinement
earlier than previously permitted by statue."  He also called attention
to the "BOP's troubling response to the COVID-19 pandemic and its
inability to protect inmates and staff adequately."

I have waited for almost two years for the Beaumont FCI Camp to respond
and to process my paperwork.  I thought maybe it was because of reduced
staff or reduced work during COVID.  After seeing the IG's report
and the comments of key leaders in Congress I now believe there is
another reason.  This is why I need your help Your Honor.

I understand a Federal Court may grant a request for Compassionate
Release if the inmate has "fully exhausted  their administrative
remedies to appeal [an adverse decision] or wait 30 days from the
lapse of such a petition."  I filed a request with the Warden on
April 28, 2020 and never received a response (see Exhibit 3).  This
exhausted my Administrative Remedies.

A second requirement is that the Court concludes that "Extraordinary
and Compelling reasons" justify a sentence reduction based on medical
conditions, age, family circumstances or other reasons.  My age is a
CDC risk factor.  My medical conditions are CDC risk factors.  My
severe allergic reaction (probably the 11 in ONE MILLION category)
is another risk factor.  CDC data supports this conclusion.

I also understand that the Court looks at section 3553(a) factors to
see if they weigh in favor of Compassionate Release.  My offense, which
I admitted and took responsibility for, is non-violent in nature.  It
was my one and only offense.  I have been a model inmate, working, taking
programming (education classes), and have not received ANY discipline
infractions.  I have completed a significant portion of my sentence and
expect significant earned time credits for work and programming.  I
am a minimum pattern score inmate (recidivism) and have the lowest
custody level (community custody).  I also have two years of supervised
release which will further help mitigate any concerns of my risk upon
release.

I will live with my wife of 40 years in the Dallas area in a single
family home.  I have strong support of my wife and my four children and
their spouses /significant others.  My spouse has been fully vaccinated
against COVID and has no medical conditions.  I am also eligible for
Medicare Insurance.

Sorrells, Ricky                                                     page 4

If granted release, I would follow CDC guidelines and decrease
my chances of contracting the virus and what statistics show could
be fatal to me.   I am asking that my sentence not be a death sentence.

I apologize Your Honor for the length of this request.  I am sure you
are aware of the unvaccinated news, but wanted to highlight what is
being said regarding unvaccinated persons from the White House to the
CDC Director to Congress.

I respectfully request that the Court grant my request immediately as
allowed by law for Compassionate Release in order to mitigate the
significant risks here in prison to my health and, in fact, my very
survival.

Sincerely,
Ricky Sorrells
Pro Se
Fed ID# 57107-177
FPC Beaumont G-C
P.O. Box 26010
Beaumont, Texas  77720

SORRELLS, RICKY

EXHIBIT 1    page 1 of 2

*Beaumont Enterprise*
*Thursday, January 6, 2022*
*Page 1+5*

# Third virus-recovered inmate dies while in federal custody

**By Meagan Ellsworth**
STAFF WRITER

A third COVID-recovered senior inmate death has been reported at a low-security federal prison in Jefferson County.

FCI Beaumont Low inmate Lee Cormier, 71, died at a local hospital on Dec. 28, according to a Wednesday news release from the U.S. Department of Justice Federal Bureau of Prisons. His death marks the fifth federal inmate death reported in Beaumont in less than a year.

Cormier was evaluated by the federal correction institute's medical staff for shortness of breath and taken to the hospital for further evaluation and treatment on Dec. 21, the release said.

Cormier tested positive for COVID-19 the year prior.

He was immediately placed in medical isolation on Nov. 6, 2020. Cormier had pre-existing medical conditions, which the CDC lists as risk factors for developing more severe COVID-19 disease, the release said.

"On Tuesday, November 17, 2020, in accordance with Centers for Disease Control and Prevention guidelines, Mr. Cormier was converted to a status of recovered, following the completion of medical isolation and presenting with no symptoms," the release said.

Cormier was sentenced in the Western District of Louisiana to a nearly 25-year-long sentence for possession of a firearm by a convicted felon. He had been in custody at FCI Beaumont since April 10, 2015. FCI Beaumont Low cur-

*Cormier continues on A5*

*Cormier continues on A5*

## CORMIER
*From page A1*

rently houses 1,575 male offenders.

Four other inmate deaths previously were reported in 2021 – two of which were reported at the FCI Beaumont Low facility. Cormier is not only the fifth inmate death and the third inmate to die at this specific facility, but the third senior to die as well, according to previous reports by The Enterprise.

Armando Ramirez, 71, died on March 27, 2021 after testing positive for CO-VID-19 in on December 17, 2020. He was placed in medical isolation that day. Similar to Cormier, he was released based on CDC guidelines on Dec. 28 after being converted to the status of recovered and presenting no symptoms. He returned to the prison's staff with shortness of breath on March 27 and was taken to the hospital where he died that same day. He had pre-existing medical conditions. The facility housed 1,486 male offenders at the time.

Robert Neal Hatchell, 63, died on September 6, 2021 after testing positive for COVID-19 on November 6, 2020 – the same day as the late Cormier. Hatchell was immediately placed in medical isolation and his medical status was changed on November 17, 2020 in accordance with CDC guidelines. He returned to staff on Sept. 3 with abdominal symptoms and was taken to the hospital where he died three days later. He had long-term, pre-existing medical conditions. The facility housed 1,457 male offenders at the time.

Two other inmates died at different federal prison facilities in Beaumont last year.

Rafael Salas, 40, was found unresponsive at the Beaumont Medium security prison on Sept. 8.

Michael Fossler, 33, was found unresponsive late Aug. 9 at the United States Penitentiary – a high-security facility in Beaumont – with just one-quarter of his sentence remaining. He too was later pronounced dead at a local hospital following staff and EMS's life-saving efforts.

*meagan.ellsworth*
*@beaumontenterprise.com*

SORRELLS, RICKY                    EXHIBIT 1      page 2 of 2

From Trulinks (inmate email system) bulletin board 1/18/22

Due to the spike in Covid19 Virus at the BML institution, the Anger Management group ran by Advanced Care Level Specialist Ms. Morgan has been postponed to the week of 1/25/2022. With that being said please be advised that inmate housing units are not able to be mixed by inmates from other housing units for example VA inmates can't mix with UA Inmates. So Ms. Morgan will recreate the Anger Management List based off of housing units with the most needs as well as in a smaller group. At that point Ms. Morgan will only do the Anger Management group on 1 unit at a time for a 10 to 12 week period based off the units who have the most inmates with higher needs for the Anger Management Group based off their Profile and Needs Assessments.

SORRELLS, RICKY        EXHIBIT 2              page 1 of 3

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | |
|---|---|---|
| Inmate Name:  SORRELLS, RICKY DALE | | Reg #:  57107-177 |
| Date of Birth:  11/02/1955 | Sex:      M    Race:  WHITE | Facility:  BML |
| Encounter Date:  01/13/2021 10:10 | Provider:  Simmons, H. FNP | Unit:      G03 |

Mid Level Provider - Evaluation encounter performed at Health Services.

**SUBJECTIVE:**

COMPLAINT  1        Provider:  Simmons, H. FNP

Chief Complaint:   Breathing Problems

Subjective:        reports received covid19 vaccine last night, developed itchy rash to hands and chest. rash and itch have resolved today. still a little bumps to chest. also with difficulty breathing, trouble swallowing, feels something stuck in throat. tried to eat oatmeal today but difficult to swallow. used a lot of inhaler between last night and now

Pain:              No

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 01/13/2021 | 10:22 BMX | 97.5 | 36.4 | | Simmons, H. FNP |
| 12/09/2020 | 08:50 BMX | 96.3 | 35.7 | | Cantue, A. LVN |
| 11/20/2020 | 08:10 BMX | 97.7 | 36.5 | | Albert, David DDS |
| 10/07/2020 | 10:46 BMX | 98.7 | 37.1 | | Wise, T. LVN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 01/13/2021 | 10:22 BMX | 70 | | | Simmons, H. FNP |
| 12/09/2020 | 08:50 BMX | 70 | | | Cantue, A. LVN |
| 11/20/2020 | 08:10 BMX | 56 | | | Albert, David DDS |
| 10/07/2020 | 10:46 BMX | 53 | | | Wise, T. LVN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 01/13/2021 | 10:22 BMX | 16 | Simmons, H. FNP |
| 12/09/2020 | 08:50 BMX | 16 | Cantue, A. LVN |
| 10/07/2020 | 10:46 BMX | 16 | Wise, T. LVN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 01/13/2021 | 10:22 BMX | 147/93 | | | | Simmons, H. FNP |
| 12/09/2020 | 08:50 BMX | 123/60 | | | | Cantue, A. LVN |
| 11/20/2020 | 08:10 BMX | 118/68 | | | | Albert, David DDS |
| 10/07/2020 | 10:46 BMX | 114/71 | | | | Wise, T. LVN |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 01/13/2021 | 10:22 BMX | 100 | | Simmons, H. FNP |

SORRELLS, RICKY                    Exhibit 2                    page 2 of 3

| Inmate Name: | SORRELLS, RICKY DALE | | | Reg #: | 57107-177 |
| --- | --- | --- | --- | --- | --- |

Inmate Name:  SORRELLS, RICKY DALE
Date of Birth:  11/02/1955
Encounter Date:  01/13/2021 10:10

Sex:  M   Race:  WHITE
Provider:  Simmons, H. FNP

Reg #:  57107-177
Facility:  BML
Unit:  G03

| Date | Time | Value(%) | Air | Provider |
| --- | --- | --- | --- | --- |
| 12/09/2020 | 08:50 BMX | 98 | Room Air | Cantue, A. LVN |
| 10/07/2020 | 10:46 BMX | 99 | | Wise, T. LVN |

Height:

| Date | Time | Inches | Cm | Provider |
| --- | --- | --- | --- | --- |
| 01/13/2021 | 10:22 BMX | 68.0 | 172.7 | Simmons, H. FNP |
| 12/09/2020 | 08:50 BMX | 68.0 | 172.7 | Cantue, A. LVN |
| 10/07/2020 | 10:46 BMX | 68.0 | 172.7 | Wise, T. LVN |

Weight:

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
| --- | --- | --- | --- | --- | --- |
| 01/13/2021 | 10:22 BMX | 192.2 | 87.2 | | Simmons, H. FNP |
| 12/09/2020 | 08:50 BMX | 190.0 | 86.2 | | Cantue, A. LVN |
| 11/20/2020 | 08:10 BMX | 192.0 | 87.1 | | Albert, David DDS |
| 10/07/2020 | 10:46 BMX | 189.0 | 85.7 | | Wise, T. LVN |

## ROS Comments

hx hld, htn, oa, mh

## Exam Comments

General - NAD, well groomed, speech clear, ambulating without difficulty
HEENT Normocephalic, PERRLA, EOM intact, no conjunctival injection, pharynx not injected, no edema, uvula midline
Neck neck supple, no palpable swelling or lymphadenopathy
Cardiovascular AHR is regular
Lungs Lung sounds clear bilaterally. no respiratory distress, accessory muscle use. chest excursion symmetrical and even
Skin - skin warm and dry, some confluent popular lesions to anterior chest wall
Abdomen - Normal bowel sounds, abdomen soft and nontender
Extremities - No edema

## ASSESSMENT:

Allergy status to oth drug/meds/biol subst, Z888 - Current

## PLAN:

## New Medication Orders:

| Rx# | Medication | Order Date |
| --- | --- | --- |
| | diphenhydrAMINE Injection | 01/13/2021 10:10 |

    **Prescriber Order:**     25 mg Intramuscularly  One Time Dose Given PRN x 0 day(s) Pill Line Only

    Indication:   Allergy status to oth drug/meds/biol subst

    Start Now:   Yes

       Night Stock Rx#:

       Source:  Pyxis

       Admin Method:   Pill Line

       Stop Date:  01/13/2021 10:28

       MAR Label:  25 mg Intramuscularly  One Time Dose Given PRN x 0 day(s) Pill Line Only

       One Time Dose Given:  Given Now

SORRELLS, RICKY                                    EXHIBIT-B              Page 3 of 3

| Inmate Name: | SORRELLS, RICKY DALE | | | | Reg #: | 57107-177 |
|---|---|---|---|---|---|---|
| Date of Birth: | 11/02/1955 | Sex: | M   Race:  WHITE | | Facility: | BML |
| Encounter Date: | 01/13/2021 10:10 | Provider: | Simmons, H. FNP | | Unit: | G03 |

**Disposition:**

Return Immediately if Condition Worsens

**Other:**

Patent allergies reviewed and needed updates applied during this visit. See Chart:Allergies for most recent patient allergy list

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 01/13/2021 | Counseling | Safety/Injury Prevention | Simmons, H. | Verbalizes Understanding |
| 01/13/2021 | Counseling | New Medication | Simmons, H. | Verbalizes Understanding |
| 01/13/2021 | Counseling | Access to Care | Simmons, H. | Verbalizes Understanding |
| 01/13/2021 | Counseling | Plan of Care | Simmons, H. | Verbalizes Understanding |

**Copay Required:** No          **Cosign Required:** Yes

**Telephone/Verbal Order:** No

Completed by Simmons, H. FNP on 01/13/2021 10:32

Requested to be cosigned by  Polavarapu, Sreedhar MD.

Cosign documentation will be displayed on the following page.

TRULINCS 57107177 - SORRELLS, RICKY DALE - Unit: BML-G-C

--------------------------------------------------------------------------------------------------

FROM: 57107177 SORRELLS, RICKY DALE
TO: Warden LOW
SUBJECT: ***Request to Staff*** SORRELLS, RICKY, Reg# 57107177, BML-G-C
DATE: 04/30/2020 03:39 PM

To: F.J. Garrido/Acting Warden Cutright
Inmate Work Assignment: RUB 2

This is to confirm and document that I sent a Petition for Elderly/Compassionate Release to you on April 28, 2020. Correctional Officer Walk picked up the mail from our unit that evening.

Should you have any issues receiving it, please notify me and I can forward an additional copy.

Thank you for your consideration.

Rick Sorrells

April 28 , 2020

Warden F.J. Garrido/Acting Wardern Cutright
FCI - Low
P. O. Box 26025
Beaumont, Texas

Re:  Ricky Dale Sorrells; (Reg. No. 57107-177.
     Petition for Elderly Compassionate Release, Pursuant to:
     a. 18 USC § 3582(c)(1)(A)(i), Reduction in Sentence Motion;
     b. First Step Act of 2018, § 603 et seq, Placement in Home
        Confinement; Attorney General Barr's Memorandums- March
        26, 2020 and April 3, 2020;
     c. FCC Beaumont Complex Warden Shults', FCI-Med. Warden Lewis'
        FCI- Low Warden Garrido's Memorandum dated April 24, 2020.

Dear Warden Garrido and/Acting Warden Cutright:

Ricky Dale Sorrells, (hereinafter referred to as Petitioner), is a federal prisoner , now serving his imposed term of imprisonment at the Federal Prison Camp in Beaumont, Texas.  (See Exhibit A - "Individualized Reentry Plan-Program Review" dated 10/14/2019 . As of April 30, 2020, Petitioner will have served 7 months against an imposed sentence of 84 months imprisonment.  As shown on Exhibit A Petitioner's projected release date is 9/02/2025 . Petitioner believes that his release date will be adjusted downward by 70 days to include the additional days of Good Time, provided by the First Step Act of 2018 (FSA-2018).

Currently Petitioner's custody designation is MIMIMUM/OUT.  And although not yet published to Petitioner, it is believed that Petitioner's BRAVO R classification will be minimum, that is, less than 10 points, thus indicative of a low risk of recidivation.

Petitioner self surrendered on September 17, 2019.

## FIRST STEP ACT OF 2018, ATTORNEY GENERAL BARR'S MEMORANDUMS, AND BOP COVID 19 UPDATE AND BOP PROGRAM STATEMENT 5050.50

Pursuant to FSA-2018 § 603 <u>et</u> <u>seq</u>, "Federal Prisoner Reentry Initiative Requthorization; Modification of Imposed Term of Imprisonment" Congress provided a pathway for federal prisoners to utilize 18 USC § 3582(c)(1)(A)(i) to directly petition the sentencing court, after the laspe of 30 day from the receipt of the Warden of the prison holding a prisoner whose Petition for Compassionate Release has either denied or there has been no response to the petition.  Filing a petition with the sentencing court under 18 USC § 3582(c)(1)(A)(i) demonstrating "Extraordinary and Compelling" reasons warranting a sentence reduction.

Pursuant to Attorney General Barr's (AG Barr) two memorandums, and the CARES ACT, BOP has been authorized and directed to "transfer inmates to home confinement".  (See <u>Exhibit B</u> ).  Petitioner satisfies the factors as established by the Center for Disease Control (CDC) in particular the first "high risk" factor of being over 60 years of age. Petitioner satisfies certain medical conditions that are considered to place the Petitioner into a category of "high risk" for severe complications if infected with the COVID 19 virus.  Pursuant to AG Barr's April 3, 2020 Memorandum, BOP is to:

(i) Immediately Maximize approriate Transfers to Home Confinement all appropriate inmates held at FCI Oakdale... and similarly situated facilities.
(2) Provided direction to BOP to transfer those inmates who were previously not eligible (pre-CARES ACT), for transfer to Home Confinement.
(3) Permitted on a case by case basis to allow inmates to quaratine at home, and found that:
(4) time is of the essence thus, "please impement this memoradum as quickly as possible..." .

2

<u>APRIL 24, 2020 "BOP CORONAVIRUS (COVID 19) UPDATE"</u>
<u>FROM COMPLEX WARDENS SHULTS, FCI-MED. LEWIS, AND FCI-LOW GARRIDO</u>

Based on the published criteria from FCC Beaumont Wardens, inmates with "at risk factors" are being prioritized for transfer to home confinement.  (April 24, 2020 Memorandum).  Petitioner satisfies, the following "at risk factors":

(1) at age 64 (>60 years old), I am according to the CDC standards in the "at risk" category for extreme complications if infected with COVID 19 virus;
(2) Petitioner is taking the following prescribed medications for:
(a). Hypertension - (Lisinopril and Hydrochlorethiazide);
(b). High Cholesterol- (Atorvastin 40 mg);
(c). Arthritis - (Meloxicam 15mg); and
(d). Severe allergy (respiratory deficiency) - OTC/Flnase.

With respect to moving into a place that has a lesser chance of contracting the COVID 19 virus, please consider that the housing units at FPC Beaumont, house approximatel 120-140 inmates in close quarters, and any one of those inmates could infect the entire unit. The home that I will live in if released to home confinement, contains one other person, my wife.  I live in a neighborhood where the next closest neighbor is more than 100 feet away and during the crisis while under Home Confinement I would not be exposed to any people other than my wife, and perhaps some other family members who may come to my home.  I am at less risk in Home Confinement than in a housing unit with more than 120-140 inmates.

<u>EXTRAORDINARY AND COMPLEING MEDICAL REASONS</u>
<u>THAT WARRANT COMPASSIONATE RELEASE</u>

Petitioner suffers from the following medical conditions:

1.  Hypertension (since age 21); (CDC "at risk"category);
2.  Fatty liver; (liver disease); (CDC "at risk" category);
3.  Premature Ventricular Contraction; (PVC of the heart): (enlarged heart condition);

3

4.  Severe Asthma as a child; yearly allergy-respiratory condition;
    (CDC "at risk" category);
5.  High Cholesterol;
6.  History of colon cancer in immediate family; and
7.  Immune system deficiency due to medication taken (CDC "at
    risk" category).

### BACKGROUND INFORMATION/RELEASE PLAN

When and if granted Home Confinement Petitioner will reside at

8539 Forest Hills Blvd., Dallas, Texas 75218; telephone (972) 803-5027,

with his wife (Margaret Sorrells).  Both Petitioner and his wife have

a retirement pension with the Texas Teacher Retirement Pension Fund,

which will be available to them after a reduction from them that will

be paid toward Petitioner's restitution.

If released to Home Confinement Petitioner has a job as a leasing

manager for Rick Ellis Consulting in Irving, Texas.  Petitioner will

obtain health insurance through his employment.  Alternatively Petitioner

will become eligible in Novermber 2020, when Petitioner has his 65th

birthday for health insurance from Medicare.  The above may be verfied

by contacting Rick Ellis Consulting and by contacting Petitioner's

wife at the telephone number above.

### SUMMARY

Petitioner meets the following criteria for Compassionate Release:

1.  64 years old (> 60 years old)
2.  suffers from chronic or serious medical conditions;
3.  experiencing deteriorating health because of the aging process;
4.  satisfies multiple "at risk" disease criteria pursuant to
    CDC guidelines;
5.  satisfies the criteria established by the BOP "COVID 19 UPDATE"and;
6.  Petitioner is statistically unlikely to recividate, due to
    being 64 years old and 65 years old in Novemeber 2020; (See
    Exhibit C- excerpt from "Reasons for Amendment 799" United States
    Sentencing Guidelings Policy Statement).

4

For the foregoing reasons and authority, Petitioner respectfully requests that this Petition for Compassionate Release be granted, and that BOP file a Motion with the sentencing court for a reduction in sentence and then to start supervised release, or alternatively, grant Petitioner's request for Home Confinement to complete the remainder of his sentence.

Respectfully submitted,

Ricky Dale Sorrells
Reg. No. 57107-177
FPC - Beaumont
P.O. Box 26010
Beaumont, Texas 77720

SORRELLS, RICKY   EXHIBIT 3   PAGE 7 OF 13

EXHIBIT  A  Pg 1 of



## Individualized Reentry Plan - Program Review  (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SORRELLS, RICKY DALE  57107-177

SEQUENCE: 02161867

Team Date: 10-14-2019

| | | | |
|---|---|---|---|
| Facility: | BML  BEAUMONT LOW FCI | Proj. Rel. Date: | 09-02-2025 |
| Name: | SORRELLS, RICKY DALE | Proj. Rel. Mthd: | GCT REL |
| Register No.: | **57107-177** | DNA Status: | BML07187 / 09-18-2019 |
| Age: | 63 | | |
| Date of Birth: | 11-02-1955 | | |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BML | C-A&O | CAMP ADMISSION & ORIENTATION | 09-17-2019 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| BML | ESL HAS | ENGLISH PROFICIENT | 10-10-2019 |
| BML | GED HAS | COMPLETED GED OR HS DIPLOMA | 10-10-2019 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| NO COURSES | | | | |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE2 | STABLE, CHRONIC CARE | 09-25-2019 |
| SCRN2-MH | SCRN2-MENTAL HEALTH | 08-16-2019 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 09-25-2019 |
| OTHER | OTHER MEDICAL RESTRICTION | 09-25-2019 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 09-25-2019 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-25-2019 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP REFER | DRUG ABUSE PROGRAM REFER | 09-24-2019 |
| ED NONE | DRUG EDUCATION NONE | 09-25-2019 |
| NR WAIT | NRES DRUG TMT WAITING | 10-09-2019 |

### FRP Details

| Most Recent Payment Plan |
|---|
| |

FRP Assignment:  **PART**   FINANC RESP-PARTICIPATES   **Start: 10-02-2019**

Inmate Decision:  **AGREED**   $25.00   Frequency: **QUARTERLY**

Payments past 6 months:  **$0.00**   Obligation Balance: **$100.00**

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $100.00 | IMMEDIATE | AGREED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

### Payment Details

Trust Fund Deposits - Past 6 months:  $725.00     Payments commensurate ?  Y

New Payment Plan:   ** No data **



## Individualized Reentry Plan - Program Review  (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SORRELLS, RICKY DALE  57107-177

SEQUENCE: 02161867

Team Date: 10-14-2019

### Progress since last review

| None- No prior goal established (Initial Review). |
| --- |

### Next Program Review Goals

| Enroll in Beginning Fitness, Personal Development, and Personal Finance by 03-01-2020. |
| --- |

### Long Term Goals

| Enroll in and complete Healthy Life Styles and Money Smart by 09-01-2020. |
| --- |

### RRC/HC Placement

|  |
| --- |

### Comments

| Inmate will be reviewed under the conditions of the Second Chance Act for Residential Reentry Center placement at 17-19 months prior to release. |
| --- |

SORRELLS, RICKY    EXHIBIT 3    PAGE 9 OF 13

EXHIBIT  A  Pg 3 of 3



## Individualized Reentry Plan - Program Review  (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SORRELLS, RICKY DALE  57107-177

SEQUENCE: 02161867

Team Date: 10-14-2019

| | |
|---|---|
| Name: | SORRELLS, RICKY DALE |
| Register No.: | **57107-177** |
| Age: | 63 |
| Date of Birth: | 11-02-1955 |

DNA Status:   BML07187 / 09-18-2019

_____

Inmate    (SORRELLS, RICKY DALE. Register No.: 57107-177)

_____

Date

_____          _____

Unit Manager / Chairperson                        Case Manager

_____          _____

Date                                                           Date

_____



# Office of the Attorney General
## Washington, D. C. 20530

March 26, 2020

MEMORANDUM FOR DIRECTOR OF BUREAU PRISONS

FROM:          THE ATTORNEY GENERAL

SUBJECT:       Prioritization of Home Confinement As Appropriate in Response to
               COVID-19 Pandemic

Thank you for your tremendous service to our nation during the present crisis. The current situation is challenging for us all, but I have great confidence in the ability of the Bureau of Prisons (BOP) to perform its critical mission during these difficult times. We have some of the best-run prisons in the world and I am confident in our ability to keep inmates in our prisons as safe as possible from the pandemic currently sweeping across the globe. At the same time, there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities. I am issuing this Memorandum to ensure that we utilize home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody.

## I.   TRANSFER OF INMATES TO HOME CONFINEMENT WHERE APPROPRIATE TO DECREASE THE RISKS TO THEIR HEALTH

One of BOP's tools to manage the prison population and keep inmates safe is the ability to grant certain eligible prisoners home confinement in certain circumstances. I am hereby directing you to prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic. Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some eligible inmates, home confinement might be more effective in protecting their health.

In assessing which inmates should be granted home confinement pursuant to this Memorandum, you are to consider the totality of circumstances for each individual inmate, the statutory requirements for home confinement, and the following non-exhaustive list of discretionary factors:

- The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

Memorandum from the Attorney General                                      Page 2
Subject: Department of Justice COVID-19 Hoarding and Price Gouging Task Force

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

In addition to considering these factors, before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement. We should not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. You should grant home confinement only when BOP has determined—based on the totality of the circumstances for each individual inmate—that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

## II.   PROTECTING THE PUBLIC

While we have an obligation to protect BOP personnel and the people in BOP custody, we also have an obligation to protect the public. That means we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways. I am therefore directing you to place any inmate to whom you grant home confinement in a mandatory 14-day quarantine period before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized process should also be subject to location monitoring services and, where a court order is entered, be subject to supervised release.

We must do the best we can to minimize the risk of COVID-19 to those in our custody, while also minimizing the risk to the public. I thank you for your service to the country and assistance in implementing this Memorandum.

EXHIBIT  C  Pg 1 of 2

with regard to "whichever is less," an important distinction from the Bureau of Prisons' criteria, which has limited application to only those elderly offenders serving significant terms of imprisonment. The Commission determined that 65 years should be the age for eligibility under the age-based category after considering the Commission's recidivism research, which finds that inmates aged 65 years and older exhibit a <u>very low rate of recidivism (13.3%)</u> as compared to other age groups. The Commission expects that the broadening of the medical conditions categories, cited above, will lead to increased eligibility for inmates who suffer from certain conditions or impairments, and who experience a diminished ability to provide self-care in prison, regardless of their age.

The amendment also includes a "Family Circumstances" category for eligibility that applies to (i) the death or incapacitation of the caregiver of the defendant's minor child, or (ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver. The amendment deletes the requirement under prong (i) regarding the death or incapacitation of the "defendant's only family member" caregiver, given the possibility that the existing caregiver may not be of family relation. The Commission also added prong (ii), which makes this category of criteria consistent with similar considerations in the Bureau of Prisons' program statement.

Second, the amendment updates the Commentary in § **1B1.13** to provide that an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction. The Commission heard from stakeholders and medical experts that the corresponding limitation in the Bureau of Prisons' program statement ignores the often precipitous decline in health or circumstances that can occur after imprisonment. The Commission determined that potential foreseeability at the time of sentencing should not automatically preclude the defendant's eligibility for early release under § **1B1.13**.

Finally, the amendment adds a new application note that encourages the Director of the Bureau of Prisons to file a motion under 18 U.S.C. § 3582(c)(1)(A) if the defendant meets any of the circumstances listed as "extraordinary and compelling reasons" in § **1B1.13**. The Commission heard testimony and received public comment concerning the inefficiencies that exist within the Bureau of Prisons' administrative review of compassionate release applications, which can delay or deny release, even in cases where the applicant appears to meet the criteria for eligibility. While only the Director of the Bureau of Prisons has the statutory authority to file a motion for compassionate release, the Commission finds that "the court is in a unique position to  assess whether the circumstances exist, and whether a reduction is warranted (and, if so, the amount of reduction), including the factors set forth 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." The Commission's policy statement is not legally binding on the Bureau of Prisons and does not confer any rights on the defendant, but the new commentary is intended to encourage the Director of the Bureau of Prisons to

USCS                                        5

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT   C   Pg 2 of 2

exercise his or her authority to file a motion under section 3582(c)(1)(A) when the criteria in this policy statement are met.

The amendment also adds to the Background that the Commission's general policy-making authority at 28 U.S.C. § 994(a)(2) serves as an additional basis for this and other guidance set forth in § **1B1.13**, and the amendment changes the title of the policy statement. These changes are clerical.

**Effective Date: The effective date of this amendment is November 1, 2016.**

© 2020 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1/25/22

To Honorable Clerk of The Court:

I'm not sure if there is any way to request my petition be heard quickly because of the COVID outbreak spreading quickly in Beaumont Prison. If so, please consider this as my request.

Thanks for your assistance!

Rick Sonnulli
57107-177
FPC Beaumont G C
P D Box 26010
Beaumont, TX 77720

Case 3:18-cr-00169-M   Document 59   Filed 02/08/22   Page 24 of 24   PageID 364

SORRELLS
57107-177
FPC Beaumont G C
PO Box 26010
Beaumont, Texas   17720

RECEIVED - 8

FEB - 8 2022

MAILROOM

Clerk of the Court
Northern District of Texas
1100 Commerce Street
Room 1452
Dallas, Texas

75242